IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON

OHIO VALLEY ENVIRONMENTAL
COALITION, INC., WEST VIRGINIA
HIGHLANDS CONSERVANCY, INC.,
COAL RIVER MOUNTAIN WATCH, INC.,
and SIERRA CLUB,

   Plaintiffs,

   v.             CIVIL ACTION NO. 3:10-cv-833

COAL-MAC, INC., and MINGO LOGAN
COAL COMPANY,

   Defendants.

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT AND FOR DECLARATORY AND INJUNCTIVE RELIEF AND RESPONSE IN OPPOSITION TO COAL-MAC'S CROSS MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

   Plaintiffs have moved for partial summary judgment against Defendant Coal-Mac, Inc. ("Coal-Mac") for violations of the selenium limits in its NPDES permit under the Clean Water Act ("CWA").  In response, Coal-Mac argues that its selenium limits were stayed by an April 2010 order of the West Virginia Environmental Quality Board ("EQB"), and that as a result there are no on-going permit violations for Plaintiffs to enforce.  On that ground, Coal-Mac seeks partial summary judgment in its favor.  However, Coal-Mac's argument rests on a mistaken interpretation of the system of cooperative federalism on which the CWA and its NPDES permit program are based.  Plaintiffs are invoking a federal cause of action to enforce federally-enforceable limits in an NPDES permit.  Those permit limits cannot be stayed or modified by state orders that do not comply with federal requirements.  Consequently, Coal-Mac's only effort to resist summary judgment should be swiftly rejected.

## FACTUAL BACKGROUND

On December 2, 2008, WVDEP issued WV/NPDES Permit WV1003763 to Coal-Mac. S.J. Ex. 1.  That permit included immediately effective limits on Coal-Mac's discharges of selenium.  Id. at 3.  In late 2009 or early 2010, Coal-Mac filed an application to modify WV/NPDES Permit WV1003763.  Specifically, Coal-Mac sought to suspend its already effective selenium limits.  S.J. Ex. 5.  By letter dated March 8, 2010, WVDEP denied Coal-Mac's modification application.  Because WVDEP denied the application, it never put a proposed modification of WV/NPDES Permit WV1003763 out for public notice and comment, as required under federal and state law.

On April 6, 2010, Coal-Mac filed an appeal with the EQB, challenging WVDEP's denial of its modification request, and simultaneously sought a "stay."  D's Ex. 1.  The stay that Coal-Mac sought was a "stay" of "the effect of the selenium limits for which the modification was sought."  Id.  By order dated April 9, 2010, the EQB purported to stay "the effect of the March 8 Order" and further purported to stay "those parts of the [Coal-Mac's] permit and/or compliance schedule that otherwise impose final selenium effluent limits until further order or final order of this Board."  D's Ex. 2.  Subsequently, by Order dated May 26, 2010, the EQB reaffirmed its prior order.  D's Ex. 3.  The EQB purported to rely on "principles of common law equity and the Board's statutory authority to set the terms and conditions of a stay."  Id. at 1.  The EQB reiterated that the intended effect of its "stay" was to "suspend[] the Permit limits for selenium based on the March 8, 2010 decision."  Id. at 2.  Importantly, the EQB noted that "[t]he decision of WVDEP to insert selenium limits into the Permit in 2008 is not part of this current appeal insofar as the time period to appeal that decision has passed."

///

### I. The Enforceability of Coal-Mac's Selenium Limits Is a Question of Federal, Not State, Law

West Virginia's NPDES program, and its authority to issue NPDES permits, did not become effective until it was approved by the U.S. Environmental Protection Agency under section 402 of the CWA.  33 U.S.C. § 1342(b) (authorizing a state to "administer its own permit program" after EPA approval).  Upon approval of a state's primacy to operate a NPDES program, EPA "shall suspend the issuance of permits."  33 U.S.C. § 1342(c)(1).  However, only the federal permitting program is suspended, not the CWA's other provisions.  <u>Washington Wilderness Coalition v. Hecla Min. Co.</u>, 870 F. Supp. 983, 987 (E.D. Wash. 1994) ("Section 1342(c) . . . simply guarantees that the state will be the sole entity issuing NPDES permits.").

EPA approved West Virginia's NPDES program in 1982.  Section 402(c)(2) clearly provides that, after a state assumes primacy for the CWA permit program, its program "shall <u>at all times</u> be in accordance with this section."  33 U.S.C. § 1342(c)(2) (emphasis added).  "All times" means both before and after EPA delegation.  Thus, "[t]he federal NPDES program allows a state to take control of the permitting process within its borders, so long as it complies with the federal standards set forth by the Clean Water Act and the regulations promulgated under that act."  <u>Ohio Valley Environmental Coalition v. Miano</u>, 66 F. Supp.2d 805, 807 (S.D. W.Va. 1998).  "To maintain primacy over the permitting process, the State must comply with all applicable federal laws."  <u>Id.</u>  Consequently, the federal law under the CWA continues to apply to state programs even after EPA's federal permit program is suspended.

This conclusion is supported by the fact that EPA's NPDES permitting requirements expressly apply to state NPDES permit programs.  40 C.F.R. § 123.25(a).  State programs "must be administered in conformance with" these requirements.  <u>Id.</u>  One of those federal requirements is that a permit cannot be modified by a state unless the state follows federal

procedures for public notice and comment.  Id. § 123.25(22) (incorporating 40 C.F.R. § 122.62 concerning permit modifications).  Another federal requirement is that a permit cannot be "modified to contain a less stringent effluent limitation if the implementation of such limitation would result in a violation of a water quality standard."  Id. § 123.25(15) (incorporating 40 C.F.R. § 122.44(l)(2)(ii) concerning anti-backsliding).

After EPA approval, therefore, the enforceability of a state-issued NPDES permit is a matter of federal, not state, law.  A state's compliance with federally-mandated requirements in federal regulations raises an issue of federal law.  Arkansas v. Oklahoma, 503 U.S. at 110 (federal CWA regulation incorporating by reference state water quality standards makes those standards federal law).  That conclusion is also compelled by the Fourth Circuit's decision in Antrican v. Odom, 290 F.3d 178, 187 (4th Cir. 2002), where the court allowed a suit against state officials to enforce the federal Medicaid Act because "it requires States to have their plans approved by the supervising federal agency and to adhere to strict federal guidelines."  There, as here, federal standards "remain the directly applicable standards with which the States must comply . . . ."  Id.  Thus, the CWA remains the applicable federal law in primacy states.

After state delegation, citizens may enforce state-issued NPDES permits in federal court under the citizen suit provision of the CWA.  Parker v. Scrap Metal Processors, Inc., 386 F.3d 993, 1005-08 (11th Cir. 2004).  Section 505 gives citizens the authority to commence civil actions in federal district court "against any person" who is alleged to be in violation of an "effluent standard or limitation."  33 U.S.C. § 1365(a)(1).  An "effluent standard or limitation" is specifically defined in section 505(f)(6) to mean "a permit or condition thereof issued under section 402" by a delegated state like West Virginia.  33 U.S.C. § 1365(f)(6).  The enforceability

of a permit condition in such a permit, including the selenium limits in this case, is a question of federal law.

## II. The EQB Orders Did Not Effectively Stay Coal-Mac's Selenium Limits Because the Orders Did Not Comply With Two Federal Requirements for Permit Modifications

Coal-Mac argues that the April 2010 EQB Order stayed and indefinitely suspended the December 2008 effective date of the selenium limits in its 2008 NPDES permit. That permit provides that Coal-Mac's selenium limits became effective on December 2, 2008. Pl. SJ Mem. 3. On March 8, 2010, WVDEP denied Coal-Mac's application to modify its permit and extend that effective date. WVDEP found that "selenium effluent limitations are in effect on this permit and, therefore, the modification sought by this application cannot be granted without violating the anti-backsliding prohibition of the federal Clean Water Act and the state Water Pollution Control Act and regulations." S.J.. Ex. 5. On April 9 and May 26, 2010, the EQB issued two orders which purport to stay the effect of WVDEP's March 8, 2010 decision and suspend Coal-Mac's selenium limits prospectively from March 8, 2010 and during the pendency of its administrative appeal. Doc. #18-3, p. 2. Thus, the EQB attempted to suspend permit limits which had already been in effect for over a year. Even if the EQB acted within the scope of its authority, its effort was not effective to suspend Coal-Mac's selenium limits for at least two reasons. First, the EQB did not follow the permit modification procedures required by federal and state law. Second, such a suspension would violate the anti-backsliding provisions of the CWA.

### A. Because the EQB Did Not Follow Required Procedures, Its Orders Were Ineffective to Suspend Coal-Mac's Selenium Limits

As a matter of federal law, the EQB orders were ineffective to modify Coal-Mac's selenium limits. A state-issued NPDES permit can only be modified in compliance with federal

5

procedures. Judge Copenhaver recently summarized those procedures in <u>Sierra Club v. Powellton Coal Co., LLC</u>, 2010 WL 454929, at *16 (S.D.W.Va. 2010):

> Federal and state regulations provide the proper procedures for issuing permit modifications. There are two types of permit modification: minor and major. 40 C.F.R. §§ 122.62, 122.63; W. Va. Code R. § 47-30-8.2. Minor modifications do not require public notice for certain small changes to permits, such as correcting typographical errors. 40 C.F.R. § 122.63; W. Va. Code R. § 47-30-8.2.c.1. None of the modifications issued by the WVDEP for WV/NPDES Permits WV1019279 and WV1019449 fall within the enumerated list of permissible minor modifications, so they must be considered major.
>
> Federal and state law specifically categorize as major modifications those that are based on new rules and those that change compliance schedules. 40 C.F.R. § 122.62; W.Va. Code R. § 47-30-8.2.c.2.C-D. Major modifications require preparation of a draft permit and compliance with public notice procedures. 40 C.F.R. § 122.62; W. Va. Code R. § 47-30-8.2.c.2. In order to be valid, there must be notice advising the public that a draft permit has been prepared and providing a minimum 30 day period for public comment. <u>Id.</u> If the modification orders do not comply with the requisite procedures, they are defective and citizen suits may proceed based on the terms of an original permit. <u>Ohio Valley Envtl. Coal., Inc. v. Apogee Coal Co., LLC</u>, 531 F.Supp.2d 747, 754 (S.D.W.Va. 2008). <u>See also</u> <u>Proffitt v. Rohm & Haas</u>, 850 F.2d 1007 (3d Cir. 1988); <u>Citizens for a Better Env't-CA v. Union Oil Co. of CA</u>, 83 F.3d 1111 (9th Cir. 1996).

Judge Copenhaver concluded that "plaintiffs may establish continuing aluminum violations in accordance with the aluminum compliance schedules within the original permits." <u>Id.</u> In the <u>Apogee</u> case cited by Judge Copenhaver, this Court similarly concluded that "a citizen suit may proceed on the terms of an original permit if an attempt to modify does not comply with the necessary procedures." 531 F. Supp.2d at 754.[1] Both the <u>Powellton</u> and the <u>Apogee</u> cases

---

[1] It makes no difference that the EQB, instead of WVDEP, attempted to modify Coal-Mac's permit. The EQB is a state administrative body and subject to the supremacy of federal law. Indeed, Coal-Mac concedes in its response brief that the EQB is "[t]he state <u>agency</u> with primary authority over NPDES permits." Ds' Memo. at 1 (emphasis added). Alternatively, even if the EQB were acting in a quasi-judicial capacity, rather than playing a purely administrative role, that would make no difference. <u>See Frilling v. Village of Anna</u>, 924 F. Supp. 821, 844 n. 27 (S.D. Ohio 1996) (holding that judicial order imposing interim limits did not modify underlying permit, noting that fact that consent order was judicially approved is not "significant").

followed an unbroken line of federal appellate cases, including Fourth Circuit precedent: United States v. Smithfield Foods, Inc., 191 F.3d 516, 524, 526 (4th Cir. 1999).

As in the Powellton and Apogee cases, the EQB did not follow the required federal procedures for modifying an NPDES permit. It did not prepare a draft permit, provide public notice of such a draft, or provide any opportunity for public comment. Instead, it unilaterally granted Coal-Mac's motion for a stay without any public participation. Indeed, there is no mechanism for the provision of public notice when a polluter, such as Coal-Mac, appeals the denial of a permit modification. Moreover, because WVDEP denied Coal-Mac's modification application on anti-backsliding grounds, there has never been any public notice of Coal-Mac's proposed modification. The attempted modification therefore violated federal law and was ineffective. Powellton, 2010 WL 454929, at *16; Apogee, 531 F. Supp. 2d at 754.

### B. The EQB's Orders Cannot Suspend Coal-Mac's Selenium Limits Because Such a Suspension Would Violate Federal Law

In addition, the EQB's orders were ineffective because they relaxed existing permit conditions, in violation of the federal anti-backsliding provision. 33 U.S.C. § 1342(o); 40 C.F.R. § 122.44(l)(2)(i). That provision prohibits "with certain narrow exceptions, any modified permit from containing 'effluent limitations which are less stringent than the comparable effluent limitations in the previous permit.'" Citizens for a Better Environment v. Union Oil Co., 83 F.3d at 1120. See also PIRG v. New Jersey Expressway Authority, 822 F. Supp. 174, 185 (D.N.J. 1992) (relaxation of permit provisions in state agreement would conflict with the anti-backsliding provision). WVDEP correctly denied Coal-Mac's request for a permit modification on this basis. Coal-Mac sought to delay compliance with selenium permit limits that had already taken effect, thereby relaxing the permit limits from specific amounts to unlimited amounts. The

EQB's orders suspended the selenium limits and therefore had the effect of granting that relaxation, in violation of the anti-backsliding prohibition.

### III. Alternatively, the EQB's "Stay" is Not a Stay; the EQB Cannot Use a "Stay" to Substantively Alter NPDES Permit Limits

As a matter of federal law, the EQB's failure to follow federal requirements nullifies its attempt to modify or suspend Coal-Mac's selenium limits. There is therefore no need to consider the effect of the EQB's action under state law. Under the Supremacy Clause of the U.S. Constitution, federal law trumps state law. However, even assuming <u>arguendo</u> that state law is relevant, EQB's actions fail on that alternative basis as well.

Coal-Mac argues that there is no ongoing violation of the selenium limits in WV/NPDES Permit WV1003763 because the EQB has stayed WVDEP's denial of Coal-Mac's request to modify those limits. Coal-Mac is correct that the EQB order purports to "suspend[] the permit limits for selenium . . . ." Coal-Mac, however, is mistaken about the meaning of "stay" and the scope of W. Va. Code § 22B-1-7(d). The EQB does not have the authority under state law, statutory or otherwise, to affirmatively alter or erase the selenium limits set forth in Coal-Mac's NPDES permit, which was duly issued on December 2, 2008 and is not on appeal before the EQB. The EQB's order cannot be squared with settled case law defining "stay," nor with the language of W. Va. Code § 22B-1-7(d). Therefore, the selenium limits remain in effect and Coal-Mac is in continuing violation of the Permit.

As a threshold matter, the EQB is an administrative agency created by statute, and the Legislature defines its authority through statute. <u>State ex rel. Hoover v. Berger</u>, 199 W. Va. 12, 483 S.E.2d 12 (1996). The statute does not grant equitable powers to the EQB. Consequently, the EQB does not have inherent equitable authority like that possessed by state or federal courts. See <u>International Union of Elec., Radio and Mach. Workers, AFL-CIO v. N. L. R. B.</u>, 502 F.2d

8

349, 354 n.* (D.C. Cir. 1974). Accordingly, to the extent the EQB's orders are grounded in "principles of common law equity" (D's Ex. 3 at 1), they are <u>ultra vires.</u>

Moreover, the EQB's orders go beyond its statutory authority. A stay is not a substantive ruling. A stay does nothing more than preserve the status quo pending appeal. W. Va. Code § 22B-1-7(d)—the only source of the EQB's pre-decision authority—employs this well-settled meaning of the term. The meaning is evident from the statute itself. W. Va. Code § 22B-1-7(d) provides:

> If it appears to the appropriate chief, the secretary or the board that an unjust hardship to the appellant will result from the execution or implementation of a chief's or secretary's order, permit or official action pending determination of the appeal, the appropriate chief, the secretary or the board, as the case may be, may grant a stay or suspension of the order, permit or official action and fix its terms …

The referenced "order, permit or official action" refers back to the first sentence of the subsection, which provides that "[t]he filing of the notice of appeal does not stay or suspend the effectiveness or execution of the order, permit or official action <u>appealed from</u> …." W. Va. Code § 22B-1-7(d) (emphasis added). Thus, the only "order, permit, or official action" that can be stayed through the authority granted in § 22B-1-7(d) is the order, permit, or action "appealed from"—here, the denial of Coal-Mac's request for a permit modification. A denial is the decision not to modify the permit. Accordingly, a stay pursuant to W. Va. Code § 22B-1-7(d) can only suspend that decision not to modify pending appeal. Like any other stay, the EQB's actions under W. Va. Code § 22B-1-7(d) merely "holds off" the ruling being appealed, thereby leaving in place the status quo ante: a duly issued WV/NPDES Permit, which must remain in full effect.

To interpret W. Va. Code § 22B-1-7(d) otherwise would be to misconstrue the meaning of "stay." The Supreme Court of the United States has recently thoroughly defined "stay": "A

9

stay does not make time stand still, but does hold a ruling in abeyance to allow an appellate court the time necessary to review it." Nken v. Holder, __ U.S. __, 129 S.Ct. 1749, 1753 (2009) (examining at length the definition of "stay" in the context of traditional court powers and the Immigration and Nationality Act). See also Scripps-Howard Radio, Inc. v. FCC, 316 U.S. 4, 9, 62 S.Ct. 875 (1942); BLACK'S LAW DICTIONARY 1413 (6th ed. 1990) (cited approvingly by the Nken Court). A stay operates "by temporarily suspending the source of authority to act – the order or judgment in question – not by directing an actor's conduct. A stay simply suspend[s] judicial alteration of the status quo …." Nken, 129 S.Ct at 1758 (internal quotations omitted.) "The whole idea [of a stay] is to hold the matter under review in abeyance because the appellate court lacks sufficient time to decide the merits." Id. at 1760. See also BLACK'S LAW DICTIONARY, stay (8th ed. 2004) (defining "stay" as "[a]n order to suspend all or part of a judicial proceeding or a judgment resulting from that proceeding. — Also termed *stay of execution*; *suspension of judgment*") (emphasis added.)

Thus, a stay is merely a decision to maintain the status quo pending appeal. The Nken Court's definition is not an innovation; it is echoed in federal courts across the country as well as in the courts of West Virginia. See, e.g., In re Zapata Gulf Marine Corp., 941 F.2d 293, 295 (5th Cir. 1991) (interpreting Fed. R. Civ. P. 62(d) and noting that its reference to "stay" only refers to a stay of the particular appeal that is pending, not any prior, underlying judgments); Gilley v. U.S., 649 F.2d 449, 453 (6th Cir. 1981) ("stays are granted by a reviewing court in order to maintain the status quo pending its own review of the actions in question"); Lincoln Elec. Co. v. MPM Technologies, Inc., 2009 WL 3246936, *1 (N.D. Ohio 2009); West Virginia Dep't of Health v. West Virginia Civil Service Com'n, 178 W.Va. 237, 238, 358 S.E.2d 798, 799 (1987) (noting that the stay at issue preserves the status quo pending appeal); Johnson v. Johnson, 159

W.Va. 434, 436, 223 S.E.2d 195, 197 (1976) (holding that the stay at issue preserves the status quo).

Here, the status quo and the effect of the denial are the same: the terms of WV/NPDES Permit WV1003763 stand as issued. However, the EQB, through its "stay," purports not only to suspend the denial, but to affirmatively erase Coal-Mac's selenium limits going forward. Its "stay" would have the effect of a de facto permit modification: a substantive ruling, not a suspension of the action "appealed from" pending appeal.[2]

The EQB's opinion demonstrates that it purports to do much more than suspend the effect of WVDEP's denial. The EQB asserted that its order "suspends those parts of the Appellant's permit that impose selenium limits until further order or final order of this Board." D's Ex. 3 at 2. That ruling is made even though the Board acknowledges that "the decision of WVDEP to insert selenium limits into the permit in 2008 is not part of this current appeal insofar as the time period to appeal that decision has passed." Far more than holding WVDEP's denial in abeyance pending appeal, the EQB's orders purports to create new substantive law. Therefore, the orders do not constitute a "stay" under any accepted definition of the term, nor under the plain language of W. Va. Code § 22B-1-7(d).

WVDEP issued WV/NPDES Permit WV1003763 to Coal-Mac on December 2, 2008. That issuance is not on appeal before the EQB and, therefore, a stay of a denial to modify the

---

[2] A hypothetical makes clear that the EQB's stay of a denial cannot result in affirmative relief. Suppose a new discharger's application for an NPDES permit to discharge pollutants were denied by WVDEP. A stay of that denial could not possibly result in the authorization for the applicant to discharge pollutants during the pendency of the applicant's appeal of the denial to the EQB.

permit cannot itself alter the permit.³ As explained above, permit modification must be accompanied by public notice and comment. Coal-Mac cannot rely on the EQB's exceedance of its authority to achieve that which WVDEP denied.

## IV. Plaintiffs Are Entitled to Summary Judgment on Their CWA Claim

The EQB orders violated federal law and were ineffective in modifying Coal-Mac's selenium limits. Those limits therefore remain in effect and are federally enforceable by Plaintiffs in this citizen suit. As a result, Coal Mac has no legal basis for disputing Plaintiffs' evidence that it is in continuing violation of those limits. Coal-Mac raises no other arguments in response to Plaintiffs' motion for summary judgment on its CWA claims. That motion should therefore be granted.

## V. Plaintiffs Are Entitled to Summary Judgment on Their SMCRA Claim

Plaintiffs have also moved for summary judgment on their SMCRA claim. That claim is derivative of Plaintiffs' CWA claim, because SMCRA rules prohibit violations of selenium water quality standards, and Coal-Mac's permit limits are based on those standards. Coal-Mac's sole defense to this SMCRA claim is the same as its defense to Plaintiffs' CWA claim, i.e., that

---

³ Moreover, the EQB's orders are predicated upon the finding of an "unjust hardship to the appellant" as provided in W. Va. Code § 22B-1-7(d). However, the "unjust hardship" must result from the agency's or the board's action that is being appealed: "If it appears to the . . . board that an unjust hardship will result from the execution or implementation of a chief's or secretary's order, permit or official action pending determination of the appeal" then a stay of the action may be granted. W. Va. Code § 22B-1-7(d).

Regarding unjust hardship, the Board found as follows: "Appellant demonstrated a potential for financial harm if it is required to comply with the selenium limits it seeks to challenge in its request for a permit modification." Setting aside that the Board found only a "potential" for harm, the Board clearly identified the source of the hardship: the selenium limits of the December 2, 2008 Permit. As the Board also noted, that Permit is not on appeal. Any "potential" hardship found by the Board does not result from the agency's or the Board's denial: by the Board's own articulation, the effect is the direct result of the Permit itself. The threshold set by W. Va. Code § 22B-1-7(d) has not been satisfied, and the purported suspension of the selenium limits is of no effect.

12

the EQB orders negate any on-going violations. Def. Mem. 5-6. However, because Plaintiffs have shown that the EQB orders are invalid and that Coal-Mac's violations of its selenium limits are continuing, Plaintiffs' success on its CWA claim also mandates success on their SMCRA claim. Powellton, 2010 WL 454929, at *17 n. 16.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' Motion for Partial Summary Judgment and issue appropriate declaratory and injunctive relief, and deny Coal-Mac's Cross-Motion for Partial Summary Judgment.

Respectfully submitted,

/s/ **Derek O. Teaney**
DEREK O. TEANEY (WVSB # 10223)
JOSEPH M. LOVETT (WVSB # 6926)
Appalachian Ctr. for the Econ. & the Envt.
P.O. Box 507
Lewisburg, WV 24901
Telephone: (304) 793-9007
Fax: (304) 645-9008
E-mail: dteaney@appalachian-center.org

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON

OHIO VALLEY ENVIRONMENTAL
COALITION, INC., WEST VIRGINIA
HIGHLANDS CONSERVANCY, INC.,
COAL RIVER MOUNTAIN WATCH, INC.
and SIERRA CLUB,

    Plaintiffs,

v.                                    CIVIL ACTION NO. 3:10-cv-833

COAL-MAC, INC. and
MINGO LOGAN COAL COMPANY,

    Defendants.

## CERTIFICATE OF SERVICE

I certify that on August 20, 2010, I electronically filed the foregoing using the CM/ECF system, which will send notification of such filing to the following CM/ECF participants:

        Robert G. McLusky
        Douglas J. Crouse
        Jackson Kelly, PLLC
        1600 Laidley Tower
        P.O. Box 553
        Charleston, WV 25322

        **/s/ Derek O. Teaney**_____
        DEREK O. TEANEY

        *Counsel for Plaintiffs*