IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON

OHIO VALLEY ENVIRONMENTAL
COALITION, INC., WEST VIRGINIA
HIGHLANDS CONSERVANCY, INC.,
COAL RIVER MOUNTAIN WATCH, INC.
and SIERRA CLUB,

        Plaintiffs,

v.                                CIVIL ACTION NO. 3:10-cv-00833

COAL-MAC, INC. and
MINGO LOGAN COAL COMPANY,

        Defendants.

MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO
FILE SUPPLEMENTAL AUTHORITY IN SUPPORT OF
DEFENDANTS' CROSS MOTIONS FOR SUMMARY JUDGMENT

## I.   INTRODUCTION

Coal-Mac, Inc. and Mingo Logan Coal Company ("Defendants") request leave of the Court to supplement their memoranda opposing Plaintiffs' motion for summary judgment and supporting their cross motions for summary judgment.  Three issues arose at the hearing, which necessitate supplemental briefing.  The Fourth Circuit Court of Appeals recently issued an opinion that speaks to the first issue—whether Defendants' modification requests may be applied retroactively.  The second issue, dealing with the process for EPA review of proposed NPDES permits, was not briefed but was a point of contention at the hearing.  Finally, Plaintiffs posited an incorrect interpretation of W.Va. Code § 22B-1-7(d).  The Court should consider Defendants' supplemental legal authority in ruling on the parties' motions for summary judgment.

{C1956134.1}

A.      **If Defendants' modification requests are ultimately granted, the extensions may be applied retroactively to April 5, 2010.**

At the January 6, 2011 hearing, the Court questioned whether the extensions of the deadline for compliance with final selenium limits could be applied retroactively to April 5, 2010 in the event that Defendants were ultimately successful in their administrative appeals to the State Environmental Quality Board ("EQB").   On January 5, 2011, the day before the hearing, the Fourth Circuit issued a decision that is instructive on this issue.  *See Friends Of The Earth, Inc. v. Gaston Copper Recycling Corp.*,  2011 WL 18368 (4th Cir. 2011).

In *Gaston Copper*, plaintiffs sued Gaston Copper ("Gaston") for CWA violations related to an NPDES permit issued in 1991.  Gaston's 1991 permit contained monitor and report requirements similar to those contained in the 2007 Amended Orders at issue in these suits. Gaston's permit required submission of preliminary engineering reports, final plans and specifications, and provided a final compliance date.   Gaston was required to file final improvement plans by September 1, 1991 but could not meet the deadline and, instead, requested an extension until November 15, 1991.  The Department of Health and Environmental Control ("DHEC") did not grant the extension until September 17, 1991—16 days after the deadline for submission of the plans had passed.  Gaston missed the extended deadline and did not submit its final plans until December 23, 1991.  As a result, the district court ruled that Gaston had violated its schedule of compliance for 54 days: the periods from September 1 to September 17, 1991; and November 15 to December 23, 1991.  *Gaston Copper,* 2011 WL 18368, *9.

The Fourth Circuit, however, reversed, ruling that Gaston was only in violation of the terms of its permit for 38 days: from November 15, 1991 (the date of the approved extension) to December 23, 1991 (the date Gaston submitted final plans).  *Gaston Copper*,   2011 WL 18368, *16.  The Court ruled that Gaston had not violated the permit from September 1, 1991

(the original deadline for submission of final plans) to September 16, 1991 (the date DHEC granted its extension request) based on DHEC approval on September 17 of an extension of the September 1 deadline. *Id.* Thus, to answer the question raised by the Court, the Fourth Circuit implicitly approved the retroactive application of extension requests, meaning that any relief obtained by Defendants in these cases could be properly applied to the original April 5, 2010 deadline for compliance.

**B.     EPA's objection to Coal-Mac and Mingo Logan's extension requests placed them in a state of limbo.**

At the January 6, 2010 hearing on the parties' motions for summary judgment, counsel for Defendants explained that Mingo Logan and Coal-Mac were placed in a state of "limbo" by EPA's objection to WVDEP's proposed modification of their permits. Counsel for Plaintiffs challenged that characterization, asserting that Mingo Logan and Coal-Mac had the opportunity to request a public hearing pursuant to 40 C.F.R. §123.44(e). Counsel for Plaintiffs did not, however, explain how the availability of such a hearing would have altered the state of suspended animation the modification requests were placed in by EPA's objection.

The hearing referenced in 40 C.F.R. §123.44(e) is simply a public hearing for interested parties to voice comments to EPA regarding the proposed permits. *See* 40 C.F.R. §123.44(e) (referencing hearing in accordance with 40 C.F.R. §124.12(c) & (d), which only provides the right to submit "comments"). It is not a proceeding on the merits of EPA's objection. Permittees do not have the right to subpoena or cross-examine witnesses, and the hearing does not act as any sort of trigger to final agency action. *See* 40 C.F.R. §§ 123.44(g) (EPA only required to withdraw, reaffirm, or modify objection, but not to issue or deny permit) & 124.12(c) & (d). In fact, Coal-Mac and Mingo Logan would not have been entitled to a merits hearing until EPA actually assumed permitting authority and denied the permit modification

requests. *See* 40 C.F.R. 124.19(a) (providing right to appeal to EAB "[w]ithin 30 days after a…NPDES…final permit decision"); *see also* 40 C.F.R. 124.15(a) ("[f]or the purposes of this section, a final permit decision means a final decision to issue, deny, modify, revoke and reissue, or terminate a permit.").[1]

Mingo Logan and Coal-Mac were therefore not provided any avenue for obtaining timely review of EPA's objections. Accordingly, Defendants accurately characterized the state of Coal-Mac and Mingo Logan's modification requests as being in "limbo" until WVDEP denied the requests and allowed the Defendants to seek administrative relief.

## C. The EQB did not exceed its statutory authority in granting the stays.

At the hearing, Plaintiffs argued that the EQB does not have the statutory authority to stay the WVDEP Amended Orders that contained the date for compliance with finally effective selenium limits. The EQB does not need broad equitable powers in excess of its explicit statutory authority to stay WVDEP compliance orders, as Plaintiffs assert. Rather, W.Va. Code § 22B-1-7(d) expressly allows the EQB to stay agency orders and does not limit that power only to orders appealed from:

> The filing of the notice of appeal does not stay or suspend the effectiveness or execution of **the** order, permit or official action appealed from except that the filing of a notice of appeal regarding a notice of intent to suspend, modify or revoke and reissue a permit, issued pursuant to the provisions of section five [§22-5-5], article five, chapter twenty-two of this code, does stay the notice of intent from the date of issuance pending a final decision of the board. If it appears to the appropriate chief, the secretary or the

---

[1] Although the D.C. District Court stated *in dicta* that EPA objections to permits have generally been found to be final agency action, it did so based on a 1980 decision that was issued <u>before</u> the creation of the Environmental Appeals Board in 1992 and of 40 C.F.R. § 124.15(a) (defining final decision as one issuing or denying permit). *See Pennsylvania Mun. Authorities Ass'n v. Horinko,* 292 F.Supp. 2d 95, 105 (D.D.C. 2003) (citing *Crown Simpson Pulp Co. v. Costle*, 445 U.S. 193, 196 (1980) ("[w]hen EPA, as here, objects to effluent limitations contained in a state-issued permit, the precise effect of its action is to "den[y]" a permit within the meaning of § 509(b)(1)(F).")).

> board that an unjust hardship to the appellant will result from the
> execution or implementation of **a** chief's or director's order, permit
> or official action pending determination of the appeal, the
> appropriate chief, the secretary or the board, as the case may be,
> may grant a stay or suspension of the order, permit or official
> action and fix its terms.

Emphasis added. Plaintiffs contend that, by referring to the order "appealed from" in the first sentence of § 22B-1-7(d), the legislature intended only to convey to the EQB the authority to stay those specific orders subject to the current appeal. In this case, Plaintiffs argue that those orders are WVDEP's denial of the modification requests, not the Amended Orders themselves.

The fault in this argument is that it ignores the differing articles used throughout the section. In the first sentence, the legislature employed the definite article, "the," in connection with "the order…appealed from…." Use of the definite article indicates reference to a specific order. Had the legislature chosen to employ similar language in the second sentence, Plaintiffs might have a viable argument that the EQB's authority to grant stays is limited to the order being appealed from.

However, the second sentence of § 22B-1-7(d) utilizes the indefinite article, "a," in conveying upon the EQB the power to stay "a chief's or director's order, permit, or official action…." As in common usage, a drafter's choice between the definite and indefinite article affects meaning. "The definite article 'the' particularizes the subject which it precedes. It is a word of limitation as opposed to the indefinite or generalizing force of 'a' or 'an.'" *American Bus Ass'n v. Slater*, 231 F.3d 1, 4-5 (D.C. Cir. 2000). *See also Reid v. Angelone*, 369 F.3d 363, 367 (4th Cir. 2004) ("because Congress used the definite article 'the,' we conclude that … there is only one order subject to the requirements"); *Warner- Lambert Corp. v. Apotex Corp.*, 316 F.3d 1348, 1356 (Fed. Cir. 2003) (reference to "the" use of a drug is a reference to an FDA-approved use, not to "a" use or "any" use); *Freytag v. Commissioner*, 501 U.S. 868, 902 (1991)

(concurring opinion of Justice Scalia) (contending that use of the definite article in the Constitution's conferral of appointment authority on "*the* Courts of Law" "obviously narrows the class of eligible 'Courts of Law' to those courts of law envisioned by the Constitution").

Use of the indefinite article in the second sentence means the legislature was not referring to a particular order, permit, or official action. Thus, the language of § 22B-1-7(d) does not so narrowly limit the EQB's authority to stay WVDEP's orders. Rather, in granting the EQB the power to stay "a chief's or director's order," § 22B-1-7(d) allows the EQB to stay any order that could result in unjust hardship.

## II. CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant their Motion for Leave to File Supplemental Authority.

Respectfully submitted,

COAL-MAC, INC. and
MINGO LOGAN COAL COMPANY

By Counsel

/s/*Robert G. McLusky*
ROBERT G. McLUSKY, WVBN 2489
MATTHEW S. TYREE, WVBN 11160
CHRISTOPHER M. HUNTER, WVBN 9768
JACKSON KELLY, PLLC
1600 Laidley Tower
Post Office Box 553
Charleston, West Virginia 25322
*Counsel for Coal-Mac, Inc. and*
*Mingo Logan Coal Company*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## AT HUNTINGTON

**OHIO VALLEY ENVIRONMENTAL
COALITION, INC., WEST VIRGINIA
HIGHLANDS CONSERVANCY, INC.,
COAL RIVER MOUNTAIN WATCH, INC.
and SIERRA CLUB,**

        **Plaintiffs,**

**v.**                                       **CIVIL ACTION NO. 3:10-cv-00833**

**COAL-MAC, INC. and
MINGO LOGAN COAL COMPANY,**

        **Defendants.**

### CERTIFICATE OF SERVICE

        I, Robert G. McLusky, do hereby certify that on January 27, 2011, I electronically filed the foregoing MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO FILE SUPPLEMENTAL AUTHORITY IN SUPPORT OF DEFENDANTS' CROSS MOTIONS FOR SUMMARY JUDGMENT with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

        Derek O. Teaney
        Joseph M. Lovett
        Appalachian Center for the Economy & the Environment
        P.O. Box 507
        Lewisburg, WV 24901

                                   /s/*Robert G. McLusky*

{C1956134.1}