IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON

OHIO VALLEY ENVIRONMENTAL
COALITION, INC., WEST VIRGINIA
HIGHLANDS CONSERVANCY, INC.,
COAL RIVER MOUNTAIN WATCH, INC.
and SIERRA CLUB,

        Plaintiffs,

v.                                  CIVIL ACTION NO. 3:10-cv-0833

COAL-MAC, INC., and MINGO LOGAN
COAL COMPANY,

        Defendants.

PROPOSED INTEGRATED PRETRIAL ORDER

        Pursuant to the Court's September 27, 2010 Scheduling Order and Local Rule 16.7(b),

Defendants submit this Proposed Pretrial Order.

        **(1)**      **Pre-Trial Disclosures Required by FR Civ P 26(a)(3) and Objections Thereto**

        Under the Court's June 7, 2011 Order, the parties will exchange FRCP 26(a)(3)

disclosures on June 20, 2011.

        **(2)**      **Contested Issues of Law Requiring a Ruling Before Trial**

        The following questions of law may be presented by Defendants' motions in limine and

may be ripe for a ruling before trial:

                a.      Whether Dr. Kavanaugh's testimony regarding Defendants' economic

benefit should be excluded.

                b.      Because Dr. Koon's deposition was not concluded until June 16, 2011,

Defendants reserve the right to file any motions in relation to his expert testimony at trial.

(3)     **Statement of Elements of Plaintiffs' Claims**

In its March 31, 2011 Order, this Court granted Plaintiffs' Motion for Partial Summary

Judgment and for Permanent and Injunctive Relief. Doc. # 70. Specifically, the Court

> The Court **FINDS** that Plaintiffs have satisfied the evidentiary burden to establish "continuous or intermittent violations" by the defendants. Further, the Court **FINDS** that there is no material issue of fact with regard to the issue of whether Defendants violated the requirement to construct and install selenium treatment facilities contained in the various WVDEP Orders and Amended Orders associated with the permits. Accordingly, Plaintiffs are **GRANTED** summary judgment on their First, Second, Third, Fourth, Fifth, Sixth, Seventh, and Eighth Claims for Relief in Coal-Mac.

*Id*. at 48.

The Court has also determined that Plaintiffs are entitled to permanent injunctive relief

and that a civil penalty must be assessed against Defendants. Id. at 49–50. Consequently, the trial

in this matter will be for the purpose of "ascertain[ing] the scope of injunctive relief and the

amount of civil penalties to be assessed." Id. at 50.

Under Section 309(d) of the Clean Water Act,

> [i]n determining the amount of a civil penalty the court shall consider the seriousness of the violation or violations, the economic benefit (if any) resulting from the violation, any history of such violations, any good-faith efforts to comply with the applicable requirements, the economic impact of the penalty on the violator, and such other matters as justice may require.

33 U.S.C. § 1319(d). Accordingly, Plaintiffs will present evidence on those factors.

Under Section 505(a) of the Clean Water Act, "[t]he district courts shall have jurisdiction,

without regard to the amount in controversy or the citizenship of the parties, to enforce . . . an

effluent standard or limitation, or . . . an order." 33 U.S.C. § 1365(a). Similarly, under Section

520(a) of SMCRA, the Court has jurisdiction to compel any person in violation of a SMCRA

performance standard. 30 U.S.C. § 1270(a). In its March 31, 2011 Order, the Court evaluated the

applicable factors to determine whether Plaintiffs were entitled to a permanent injunction, and

concluded that Plaintiffs have made the requisite showing. Doc. # 70 at 49. Accordingly, Plaintiffs will present evidence at trial relevant to how Defendants can achieve compliance with their selenium limitations and in what timeframe.

(4)     **Defendants' Statement of Essential Elements**

In the March 31, 2011 ruling, the Court held that, for the purpose of liability, the stays issued to Coal-Mac and Mingo Logan were legally ineffective to prevent their selenium limits from taking effect on April 5, 2010, as scheduled.  In accordance with this ruling, the remaining critical issues include (1) the scope of the injunctive relief, meaning the appropriate means of compliance, and (2) the amount of civil penalty Defendants should pay, including the appropriate calculation of economic benefit.

(5)     **Plaintiffs' Summary of Material Facts and Theories of Liability**

The Court has already granted Plaintiffs' Motion for Partial Summary Judgment with regard to liability, so Plaintiffs will focus in this section on the relief they seek for violations of the three permits at issue in this action.

The federal courts, when assessing civil penalties, consider a violation of an average monthly effluent limitation to be a violation of the limit for each and every day of the month that the violation occurred. *See*, e.g., *Chesapeake Bay Foundation, Inc. v. Gwaltney of Smithfield, Ltd.*, 791 F.2d 304, 313-15 (4th Cir. 1986), vac'd on other grounds, 484 U.S. 49 (1987). Applying that principle, Defendants' discharge monitoring reports through the first quarter of 2011 reveal that Mingo Logan has accrued 56 days of violation of its selenium limits on Outfall 001 of WV/NPDES Permit WV0096369 since those limits went into effect in April 2010; that Mingo Logan has accrued 1,507 days of violations of the selenium limits in WV/NPDES Permit WV1004956 since those limits went into effect in April 2010; that Coal-Mac has accrued 723

days of violation of the selenium limits in WV/NPDES Permit WV1003763 since December 2008; and that Coal-Mac has accrued 881 days of violation of the selenium limits in WV/NPDES Permit WV0068764 since those limits went into effect in April 2010. In sum, Defendants have accrued 3,167 days of violation since December 2008. If Coal-Mac's violations of WV1003763 are excluded, then the days of violation total 2,286.

Courts can use one of two methods to calculate a civil penalty under the Clean Water Act. *United States v. Smithfield Foods, Inc.*, 191 F.3d 516, 528 n.7 (4th Cir. 1999). Under the "top-down" method, the Court "begins with the statutory maximum and adjusts downward based on its evaluation of § 309(d) factors." Id. Here, the statutory maximum for Defendants' 2,286 days of violation is $85,725,000. That amount increases to $118,635,000 if the violations of WV/NPDES 4 WV1003763 are included.

Alternatively, a court can use the "bottom-up" method, in which "the court begins with the violator's estimated economic benefit from noncompliance . . . and then adjusts up or down based on the court's evaluation the six factors set out in § 309(d)." Id. Here, Plaintiffs' economic expert has calculated Defendants' economic benefit of noncompliance with its selenium limits in the permits at issue to range from $43.3 million to $52.4 million.

Plaintiffs intend to present evidence to establish that Defendants' prolonged period of noncompliance, the seriousness of their violations, and their failure to make any serious efforts to comply justify an upward adjustment to the civil penalty. That evidence will be in the form of Defendants' discharge monitoring reports, and the testimony of Plaintiffs' engineering expert.

On injunctive relief, Plaintiffs will offer expert testimony that, due to Defendants' prolonged delay in taking steps to comply with its selenium limits, the technology that Defendants apply must be capable of:

1.      Consistently meeting the selenium limits, i.e., 4.7 and 8.2 µg/l, respectively, for the average daily and maximum daily limits;

2.      Responding to the variations in wastewater flow while continuing to consistently meet the effluent limits;

3.      Being installed within the constraints of the outfall site or within a reasonable distance from the site; and

4.      Being designed and successfully placed into operation in a minimum amount of time.

Based on the fourth criterion, only technologies that have been previously tested and/or successfully placed into full-scale operation could be acceptable.

Plaintiffs' engineering expert will offer testimony that there are three technologies that 5 meet the above criteria: (1) reverse osmosis, (2) biological treatment using the ABMet process, and (3) biological treatment using a fluidized bed reactor (FBR). Of those three, the FBR is the least costly, and therefore Plaintiffs' evidence of cost will be based on that technology.

**(6)      Defendants' Summary of Material Facts and Theories of Liability**

**(a)      Injunctive Relief**

Defendants will offer testimony of John McDaniel and Terry Potter to describe the efforts that Defendant has undertaken at each of the outlets at issue.  Defendant anticipates that Messrs. Potter and McDaniel will testify to significant, good faith steps Defendants have taken to bring these sites into compliance with permit limits.  They will also testify about their understanding of the positions taken by various state regulatory entities.

Defendants will present the expert testimony of Jim Bays regarding appropriate injunctive relief. Mr. Bays is an expert in natural treatment systems, having worked with natural treatment systems for several years. Mr. Bays will testify that natural treatment applications are commonly used for the treatment of mine-impacted water. Common applications include ponds, wetlands, and biochemical reactors. These systems offer many environmental and technological advantages. Though full-scale natural treatment systems had not been implemented to treat selenium at surface mine sites prior to 2009, the systems are commonly built for natural treatment of metal-contaminated wastewater and have long been applied for the treatment of acid mine drainage in Pennsylvania. Natural treatment systems have been successfully applied to the treatment of selenium-impacted waters.

Mr. Bays will testify that, based upon his review of information on the environmental features of the Arch outlets, the scientific literature on the subject, and his experience with natural treatment systems, assuming construction and establishment proceeds as planned, each of the outlets at issue will be in compliance with permit standards by the dates indicated in his expert report.

Mr. Bays is expected to testify that Defendants' exploration of treatment options was reasonable and diligent. Mr. Bays has personally visited the outlets in question, has evaluated options for compliance at each outlet, and continues to refine his analyses. Where indicated, Mr. Bays will be designing and/or implementing pilot and/or full scale testing for natural treatment technologies at Outlets 002 (WV1003763) and 014 (WV006874). Mr. Bays reviewed and approved of Defendants' designs and plans for implementation of bioreactors at Outlets 001 (WV1004956) and 001 (WV006874). Mr. Bays is expected to testify that passive treatment systems in the form of bio-reactors are the most environmentally sound, cost effective means of

compliance for these four outlets.  Mr. Bays will further testify that the bioreactors at these four outlets will consistently reduce selenium levels to within compliance limits.

Additionally, Mr. Bays has reviewed the proposed design and implementation of a water management plan to reduce selenium to compliance levels at Outlet 001 (WV096369).   He has also reviewed and approved the design for and implementation of bioremediation at Outlet 015 (WV1004956).

Mr. Bays will discuss how he arrived at his compliance recommendations, the costs associated with those recommendations, and the predicted implementation schedules associated with those recommendations.  Mr. Bays may also testify about the costs and drawbacks of other treatment options.

**(b)    Civil Penalties**

Congress authorized district courts to assess civil penalties against persons violating the Clean Water Act at 33 U.S.C. § 1319(d).   The statute provides for a maximum penalty; it does not limit the Court's discretion to assess lower penalties.

The six factors Courts consider to determine the amount of civil penalty are:

(i)      the seriousness of the violation or violations,

(ii)     the economic benefit (if any) resulting in the violation,

(iii)    any history of such violations,

(iv)    any good faith efforts to comply with applicable requirements

(v)     the economic impact of the penalty on the violator,

(vi)    and such other matters as justice may require.

The Fourth Circuit has approved a "bottom-up" approach to calculating these penalties, wherein one begins by calculating economic benefit, then adjusts upward *_or downward_* based on the six

factors in 33 U.S.C. § 1319(d).

In *Allegheny Ludlum*, the Third Circuit noted that the economic benefit calculation starts with the costs spent or that should have been spent, to achieve compliance.  Once that figure is established, an appropriate calculation on economic benefit should also reflect the time value of money.  In order to make that calculation, a court must apply an interest rate to determine the present value of the avoided or delayed cost.  The Third Circuit rejected the district court's use of the Weighted Average Cost of Capital ("WACC") and concluded that there are two possible approaches to calculation of economic benefit: (1) the cost of capital; and (2) the actual return on capital.  In *Allegheny Ludlum*, the defendant's actual rate of return was less than half the rate that the government's expert witness proposed.  The Third Circuit concluded that the application of the government's proposed rate may so vastly overstate the economic benefit to defendant of its improper discharges, that is does not "level the playing field," and that it constitutes an abuse of discretion.  The court stated that "discretion is not a license to adopt an opinion based on unsound methodology[.]"

Defendants will challenge Plaintiffs' assertion that there was a prolonged period of non-compliance, the seriousness of the violations, Plaintiffs' contention that Defendants did not make a good faith effort towards compliance, and the appropriate amount of civil penalties.  Defendants will offer the testimony of expert biologist, Peter Chapman, concerning harm to the environment. John McDaniel, Director of Environmental Compliance for Defendants, will testify concerning Defendants' good faith efforts to comply with their selenium limits including—but not limited to—compliance efforts at the Mingo Logan outlets.  Terry Potter, Coal-Mac Engineering Manager, will testify concerning Defendants' good faith efforts to comply with their selenium limits including—but not limited to—Defendants' compliance efforts at the Coal-Mac outlets.

Both Mr. McDaniel and Mr. Potter will testify concerning Defendants' good faith reliance upon the EQB stays.

Defendants will offer the expert testimony of Mr. Robert Fuhrman who will testify that the economic benefit that Arch received from what this Court has determined to be its violation of the Clean Water Act is between $42,482 and $80,793.  Mr. Fuhrman will explain that he used the cost figures and timing of compliance as provided by Mr. Bays and CH2M Hill.  Using well-accepted techniques, he compared the present value of two sets of cost streams:  the "on time" case reflecting the date that compliance was deemed to be required and the "delay" case reflecting timing for the actual costs incurred.   Using methodologies widely accepted in the field of capital finance, Mr. Fuhrman accounted for inflation, discount, and interest forward rates.  Should Dr. Kavanaugh be allowed to testify, Mr. Fuhrman will also explain that the opinion offered by the Plaintiffs is not grounded on the least cost of compliance and that Dr. Kavanaugh's methodologies are not consistent with accepted methodologies.

**(c)     Standing**

Plaintiffs' experts have not addressed Outlet 003 of Permit WV68764.  As such, Defendants presume that Plaintiffs are no longer pursuing claims related to discharges from Outlet 003.  If Plaintiffs are pursuing claims related to Outlet 003, Defendants intend to challenge Plaintiffs' standing to pursue those claims, given the remote location of Outlet 003.  Accordingly, Defendants anticipate cross-examining Plaintiffs' standing witnesses in the event that Plaintiffs seek to pursue claims related to Outlet 003 at trial.

**(7)     Plaintiffs' Listing of Contested Issues of Fact and Contested Issues of Law**
**Issues of Fact.**  Plaintiffs expect to contest the following facts:

a.     Whether the seriousness of Defendants' violations justifies an upward adjustment to the civil penalty in this case;

b.      The amount of the economic benefit to Defendants of their noncompliance with their selenium limits;

c.      Whether Defendants' lengthy history of selenium violations justifies an upward adjustment to civil penalty in this case;

d.      Whether the absence of any good faith efforts on the part of Defendants over the past five to seven years to come into compliance justifies an upward adjustment to civil penalty in this case;

e.      Whether any of Defendants' proposed treatment plans will achieve compliance as soon as possible, if at all;

f.      The amount of time that Defendants will need to achieve compliance as soon as possible;

g.      The cost of treatment systems necessary to bring Defendants into compliance with their selenium limits;

h.      The extent of flow from each outfall and the amount of that flow that must be treated to achieve compliance with selenium limits; and

i.      The effect on the streams from Defendants' flow augmentation plans.

**Issues of Law.** The following are the contested issues of law in this action:

a.      Whether a violation of a monthly average effluent limitation constitutes a violation for each day of that month. *See, e.g., Chesapeake Bay Foundation, Inc. v.*

*Gwaltney of Smithfield, Ltd*., 791 F.2d 304, 313-15 (4th Cir. 1986), vac'd on other grounds, 484 U.S. 49 (1987).

b.    Whether the use of a Defendants' weighted average cost of capital ("WACC") or a capital-asset pricing model to calculate the Defendants' economic benefit are reasonable and appropriate methodologies. *See, e.g., United States v. Smithfield Foods, Inc.*, 191 F.3d 516, 530–31 (4th Cir. 1999); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs*., 890 F. Supp. 470, 482 n.3 (D.S.C. 1995).

c.    Whether, because a precise economic benefit to a polluter may be difficult to prove, reasonable approximations of economic benefit will suffice. *United States v. Smithfield Foods, Inc.*, 191 F.3d 516, 529 (4th Cir. 1999).

d.    Whether Defendants' treatment plans comply with state narrative water quality standards and/or the state antidegredation policy. 47 C.S.R. § 2-3 & 2-4.

**(8)    Defendants' Listing of Contested Issues of Fact and Contested Issues of Law Issues of Fact.**

a.    The amount of the economic benefit accrued to Defendants due to noncompliance with their selenium limits;

b.    Whether Defendants' good faith efforts to come into compliance justifies a downward adjustment to civil penalty in this case;

c.    Whether Plaintiffs may dictate a particular treatment technology for compliance, particularly where such a technology is not  the most cost effective means of achieving compliance;

d.      Whether Plaintiffs' may use the cost of a technology that is not lowest cost of compliance as the basis for an economic benefit calculation;

e.      The amount of time that Defendants will need to achieve compliance;

f.      Whether there is evidence of harm to the biota in the receiving streams;

g.      Regardless of the liability determination, whether, as an equitable matter, the violation of a 30-day limit should give rise to assessment of 30 days of penalties.

h.      Whether Defendants' good faith reliance upon the stay orders issued in March of 2010 by the West Virginia Environmental Quality Board justifies a downward adjustment to the civil penalty in this case;.

i.      Whether Plaintiffs' expert testimony concerning the economic benefit of noncompliance should be excluded for the reasons articulated in Defendants' Motion in Limine;

j.      Whether Plaintiffs' expert testimony concerning injunctive relief should be excluded for the reasons articulated in Defendants' Motion in Limine;

k.      Whether Defendants complied with the interim construction deadlines in the DEP amended orders by implementing a pilot project prior to October 5, 2008;

l.      Whether Plaintiffs have standing to pursue claims related to Outlet 003, Permit WV0068764.

**Issues of Law.**  The following are the contested issues of law in this action:

a.  Whether it is appropriate to apply a proposed rate of return to calculate the economic benefit associated with past noncompliance where the proposed rate vastly exceeds a defendant's actual rate of return. *United States v. Allegheny Ludlum Corp.*, 366 F.3d 164 (3d Cir. 2004).

b.  Whether a violation of a monthly average effluent limitation must be counted as a violation for each day of that month for purposes of penalty calculation. *See, e.g., United States v. Allegheny Ludlum Corp.*, 366 F.3d 164, 178 (3d Cir. 2004); *Natural Resources Defense Council, Inc. v. Texaco Refining and Marketing, Inc.*, 2 F.3d 493 (3d Cir. 1993).

**(9)     Plaintiffs' Proposed Stipulations**

Plaintiffs propose the following stipulations, and will work with Defendants to obtain agreement on these points and any that Defendant suggest:

a.  The discharge monitoring reports submitted by Defendants from April 2010 through the first quarter of 2011 reveal that Defendants violated their selenium limitations on a certain number of occasions.

b.  Defendant discharged effluent with the selenium concentrations indicated in the discharge monitoring reports submitted to the West Virginia Department of Environmental Protection.

**(10)    Defendants' Proposed Stipulations**

Defendants are willing to stipulate that they discharged effluent with the selenium concentrations indicated in the discharge monitoring reports submitted to the West Virginia

Department of Environmental Protection. Defendants may be able to stipulate to the number of exceedances shown in their discharge monitoring reports prior to trial.

### (11) Plaintiffs' suggestions for the Avoidance of Unnecessary Proof and Cumulative Evidence

The Parties should stipulate to the facts articulated in Section (6). Such will eliminate the need for Plaintiffs to introduce Defendants' discharge monitoring reports and elicit testimony regarding the number of violations. Moreover, testimony from Defendants' biology expert should be excluded per the Plaintiffs' pending motions in limine.

### (12) Defendants' suggestions for the Avoidance of Unnecessary Proof and Cumulative Evidence

Defendants may be able to stipulate to the number of exceedances shown in their discharge monitoring reports prior to trial.

### (13) Special Procedures

At this time, neither Plaintiffs nor Defendants foresee any potentially difficult or protracted aspects of the trial that may involve complex issues, multiple parties, difficult legal questions or unusual proof problems that would require special procedures.

### (14) Voir Dire Questions

Because this is not a jury trial, this provision is inapplicable.

### (15) Estimate of the Number of Trial Days Required

Defendants estimate that trial should require 3-4 days. Plaintiffs estimate that the trial should require approximately 3 days.

### (16) Required Courtroom Technology

Neither of the parties foresee the need for special courtroom technology.  Should that change, the parties commit to notifying Court personnel at least seven days prior to trial should they need access to special technology.

     **(17)    Other Relevant Matters for Pretrial Discussion or Disposition**

Other than those matters raised above or in Defendants' motion in limine, Plaintiffs and Defendants are unaware of any other matters requiring pretrial disposition at this time.  Plaintiffs reserve the right to raise such matters with Defendant and the Court should Plaintiffs become aware of them before trial, and Defendants do likewise.

Respectfully submitted,

***/s/Derek O. Teaney***_____
DEREK O. TEANEY (WVSB # 10223)
JOSEPH M. LOVETT (WVSB # 6926)
Appalachian Ctr. for the Economy & the Envt.
P.O. Box 507
Lewisburg, WV 24901
Telephone: (304) 793-9007
Fax: (304) 645-9008
E-mail: dteaney@appalachian-center.org
*Counsel for Plaintiffs*

***/s/Christopher M. Hunter***_____
ROBERT G. McLUSKY, WVBN 2489
CHRISTOPHER M. HUNTER, WVBN 9768
MATTHEW S. TYREE, WVBN 11160
JACKSON KELLY, PLLC
1600 Laidley Tower
Post Office Box 553
Charleston, West Virginia 25322
*Counsel for Defendants*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**AT HUNTINGTON**

**OHIO VALLEY ENVIRONMENTAL**
**COALITION, INC., WEST VIRGINIA**
**HIGHLANDS CONSERVANCY, INC.,**
**COAL RIVER MOUNTAIN WATCH, INC.**
**and SIERRA CLUB**

               **Plaintiffs,**

**v.**                                        **CIVIL ACTION NO. 3:10-cv-0833**

**COAL-MAC, INC.**
**and MINGO LOGAN COAL COMPANY,**

               **Defendants.**

### CERTIFICATE OF SERVICE

        I, Christopher Hunter, do hereby certify on June 20, 2011, I electronically filed the foregoing **PROPOSED INTEGRATED PRETRIAL ORDER** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

                  Derek O. Teaney
                  Joseph M. Lovett
                  Appalachian Center for the Economy and the
                    Environment
                  P.O. Box 507
                  Lewisburg, WV 24901

                                        */s/Christopher M. Hunter*